# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 8, 2013

## STATE OF TENNESSEE v. TIMOTHY LAMONT THOMPSON

**Appeal from the Criminal Court for Davidson County**
**No. 2010-C-1932     Steve R. Dozier, Judge**

---

**No. M2012-01151-CCA-R3-CD    Filed October 30, 2013**

---

A Davidson County jury convicted appellant, Timothy Lamont Thompson, of aggravated robbery and aggravated assault. The trial court sentenced him as a repeat violent offender to life without parole for the aggravated robbery conviction and as a career offender to a concurrent sentence of fifteen years for the aggravated assault conviction. On appeal, he challenges the trial court's denial of his motion to suppress pretrial eyewitness identifications; the sufficiency of the convicting evidence; the admission of testimony regarding the discovery of a BB gun one month after the robbery; and the trial court's refusal to modify the Tennessee Pattern Jury Instruction on identification. Following our review, we affirm the judgments of the trial court; however, we remand this case to the trial court for entry of an amended judgment form for the aggravated robbery conviction reflecting appellant's status as a repeat violent offender.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Case Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennant (on appeal), Jonathan F. Wing (at trial), and Kristin Stangl (at trial), Assistant District Public Defenders, Nashville, Tennessee, for the appellant, Timothy Lamont Thompson.

Robert E. Cooper, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case concerns the April 15, 2010 robbery and assault of employees at the McDonald's restaurant on West End Avenue in Nashville, Tennessee. The perpetrator, identified as appellant by McDonald's employee Jonathan Cox, brandished a firearm at the manager, Vernida Conley, ordering her to take him to the safe. As he walked with her to the office, he also ordered another employee, Antonia Avant, to come with them. The manager gave him $700-800 from the safe, and he ran outside. Mr. Cox followed him for a time until Mr. Cox saw a police officer, whom he informed of the robbery. Appellant went to the Holiday Inn on West End Avenue, where he changed clothes and called for a taxicab. The cab driver drove him to another area of Nashville. Appellant later went to Williamson County, Tennessee, to visit his daughter and her mother, Amelia Patterson. Ms. Patterson recognized appellant from the hotel surveillance video shown on the news that weekend. Appellant was arrested on April 20, 2010, in Williamson County, Tennessee. A Davidson County grand jury indicted him for the aggravated robbery of Ms. Conley and the aggravated assault of Ms. Avant. Following a jury trial, he was convicted as charged.

I. Motion to Suppress Hearing

Prior to trial, appellant moved the court to suppress the pretrial identifications by Jonathan Cox, the McDonald's employee who first saw appellant, and Yaird Beyene, the cab driver who drove appellant the night of April 15, 2010. At the motion hearing, Metro Nashville Police Detective Robert Peterson testified that he prepared a photographic lineup on April 19, 2010, that included appellant. He said that he had prepared approximately 300 lineups prior to April 2010. Detective Peterson testified that he creates photographic lineups using a "subject poll that is very similar to the suspect in question . . . similar height, weight, . . . race, things of that nature." When he presents lineups to witnesses, he "inform[s] them that the individual may or may not be on the lineup form." He also tells them not to choose a subject if the individual is not in the lineup and not to focus on "backgrounds, . . . hair styles," or things that can change. Detective Peterson testified that on April 19, 2010, Mr. Cox identified appellant from the photographic lineup, and he further testified that he believed Mr. Cox made the identification within twenty seconds. On April 20, 2010, Detective Peterson went to Mr. Beyene's home to show him the photographic lineup. Mr. Beyene also identified appellant from the lineup form. Detective Peterson testified that he followed his typical procedure when showing the lineup form to both Mr. Cox and Mr. Beyene. The lineup in question was admitted into evidence, as well as copies of the lineup on which Mr. Cox and Mr. Beyene had circled appellant and copies of the forms on which Detective Peterson had recorded the witnesses' comments when they made their identifications. For Mr. Cox, Detective Peterson wrote that he pointed to number one in the

lineup and said, "That's him, that[']s the man right there." For Mr. Beyene, Detective Peterson wrote that he said, "This guy, [number one]."

On cross-examination, Detective Peterson testified that appellant was the only individual in the photographic lineup wearing a red shirt. He further testified that on the night of the robbery, Mr. Cox told a police officer that the robber was five feet and six or seven inches tall, black, 200 pounds, and in his thirties. Detective Peterson agreed that Mr. Cox's description was very broad. He testified that the police released snapshots from the Holiday Inn's surveillance video, and subsequently, the police received tips that identified the individual as "Timothy" and "Thompson." From these tips, Detective Peterson developed appellant as a suspect. Detective Peterson agreed that he could have someone other than himself show the witnesses the photographic lineup; that he could have printed the pictures individually rather than show them all at once; and that he could have given witnesses written instructions. However, for the lineups in question, he did not do those things.

Metro Nashville Police Sergeant Jason Proctor testified that he participated in the McDonald's robbery investigation on April 15, 2010. He learned that the suspect might have gone to the Holiday Inn across the street and called a taxicab from there. Sergeant Proctor contacted the cab company's dispatcher, who had Mr. Beyene return to the Holiday Inn. Mr. Beyene told Sergeant Proctor that his passenger had been wearing red shorts and a white shirt. Sergeant Proctor showed the hotel's video surveillance to Mr. Beyene to determine whether Mr. Beyene's passenger was the suspect, and Mr. Beyene confirmed that the individual on the video was his passenger. On cross-examination, Sergeant Proctor testified that the video surveillance footage shown to Mr. Beyene was in color but was not enhanced in any way.

Following the testimony, the trial court took the matter under advisement. The court later issued a written order denying appellant's motion to suppress the identifications, specifically concluding that the detective's identification procedure was not unduly suggestive.

## II. Trial

The following facts were adduced at trial. McDonald's employee Jonathan Cox was on his break at approximately 8:20 p.m. or 8:25 p.m. on April 15, 2010. He went to the men's restroom but left when he saw a man entering the restroom stall. Mr. Cox recalled that the man was wearing a gray sweat suit and had distinctive eyes, describing them as "cat-like." He testified that the restroom was well-lit. Mr. Cox identified appellant as the man he saw in the restroom in both a pretrial photographic lineup and in the courtroom. Mr. Cox

testified that when he returned to the restroom later, he had difficulty opening the door, and he saw appellant, then with his face covered by a mask, behind the door. Appellant drew Mr. Cox's attention to a handgun in appellant's waistband and told him, "[D]on't move." Mr. Cox pushed the door against appellant, turned around, and ran past the restaurant counter, yelling that they were being robbed. He then exited the restaurant through the back door.

Vernida Elaine Conley, the swing manager on duty at the time, testified that she was at the front counter helping customers when she saw one of her employees walk to the restroom and then run back by the counter. Next, she saw a heavy-set man, who was wearing a gray jogging suit and a mask while carrying a black gun, approach her. The man grabbed her shirt and told her to go to the safe, which was located in the back office.

Antonia Avant was working at the back drive-thru window at the time, and when she heard people running and screaming, she left her post to ask what was happening. She testified that a man grabbed her by the shirt and pulled her into the office. The man told Ms. Conley to open the safe, which required a key and a code to unlock. The man held a gun on Ms. Avant while Ms. Conley was opening the safe. Ms. Conley gave him $700 to $800 in a bag. The man left the restaurant, and Ms. Conley pressed the alarm button she wore around her neck.

Meanwhile, Mr. Cox had been waiting for appellant to exit the restaurant. When he saw appellant leave, Mr. Cox followed him as he crossed West End Avenue and saw him go between two stores. Mr. Cox flagged down a Vanderbilt University police officer to tell him the situation. Video footage from the officer's cruiser was introduced into evidence.

Rosemary Smith testified that she had been at McDonald's during the robbery and left while it was still in progress. She and her husband were sitting in their car at the traffic light in front of McDonald's when Mr. Cox was chasing appellant across West End Avenue. Mrs. Smith said that she and her husband returned to their hotel, the Holiday Inn across the street from McDonald's. Mrs. Smith testified that when she arrived at the hotel, she sat on a bench outside. She observed a man wearing a white T-shirt and red shorts exit the Holiday Inn and ask where the taxicabs were. She said that he was holding a plastic bag and seemed nervous to her. He went back inside the hotel and then returned outside. Mrs. Smith testified that her intuition told her this man was the McDonald's robber, so she told the police officers gathered at McDonald's that she believed the robber had just left the Holiday Inn in a taxicab.

Shauna Harris, the front desk clerk at Holiday Inn, testified that she encountered appellant at the hotel on April 15, 2010. She recalled that he was wearing gray sweat pants and a white T-shirt. Appellant asked her to call a taxicab for him and asked for directions to

the restroom. When he returned from the restroom, appellant was wearing red shorts instead of the gray pants. Appellant asked Ms. Harris for a bag, and when she handed one to him, he placed the gray sweat pants in the bag. Ms. Harris identified appellant in a pretrial photographic lineup. During cross-examination, she agreed that she was only "half sure" that appellant was the man she saw on April 15, 2010.

Yaird Beyene testified that he picked up appellant from the Holiday Inn. Appellant sat in the front passenger seat and placed a plastic bag at his feet. When Mr. Beyene began to drive away from the hotel, appellant stopped him and left the taxicab. He went to the side of the hotel and returned to the taxicab with a gray jacket or shirt. Mr. Beyene drove him to the Belmont University area, a drive that took approximately six minutes. Appellant paid him $10 in cash for the ride. Mr. Beyene testified that his dispatcher asked him to return to the hotel later. When he did so, he spoke with the police about driving appellant. He did not recall viewing surveillance video from inside the hotel. Mr. Beyene identified appellant in a pretrial photographic lineup, shown to him by Detective Peterson on April 20, 2010, and in the courtroom during trial as his passenger from April 15, 2010.

Detective Robert Peterson testified that he was the lead detective for the McDonald's robbery. He said that the police did not develop a suspect the night of the robbery, which was a Thursday night, so they released still photographs from the Holiday Inn's surveillance video to the media, which was broadcast on the news over the weekend. By Monday, April 19, 2010, he had developed appellant as a suspect. He prepared a photographic lineup that included appellant, and he showed the lineup to both Jonathan Cox and Shauna Harris. Both Mr. Cox and Ms. Harris chose appellant's picture as the person they saw on April 15, 2010. Detective Peterson testified that appellant was apprehended in Williamson County on April 19, 2010.

Amelia Patterson, a resident of Williamson County, testified that she has a daughter with appellant. Appellant visited her and their daughter from April 16, 2010, through April 19, 2010. She recalled that he was wearing a white T-shirt and red shorts when he arrived. During the weekend, he bought a toy for their daughter and bought a cellular telephone for both their daughter and for Ms. Patterson.[1] Ms. Patterson said that to her knowledge, appellant was not working at the time and was not in school. Ms. Patterson testified that she saw appellant on the news that weekend, in surveillance footage, wearing the same clothing he had been wearing when he arrived at her house. On Monday, April 19, 2010, Ms. Patterson injured her leg, and appellant accompanied her to the hospital. He was arrested while they were there. After she was discharged from the hospital, she gave Detective

[1] The testimony is unclear whether one telephone was purchased for both to use or whether two telephones were purchased, one for each.

Andrew Green consent to search her home, and she directed him to the clothing and shoes appellant had been wearing when he arrived.

Detective Peterson testified that he took custody of appellant from Detective Green, who also gave him a bag of appellant's clothing. Detective Peterson further testified that appellant's arrest report indicated that he did not have a job and was not in school. During cross-examination, Detective Peterson agreed that no weapon, money bag, or mask was located immediately after the robbery or appellant's arrest.

Other employees of the police department testified that fingerprints were collected at McDonald's and in Mr. Beyene's taxicab, but the fingerprints that were valuable for identification purposes did not match appellant's fingerprints. Vanderbilt University Police Officer Daniel Knalls testified that on May 12, 2010, a taxicab driver directed him to an area outside of the Holiday Inn, where he found a handgun partially hidden in the bushes. Officer Knalls said that the handgun looked real but was actually a BB gun. Detective Peterson testified that no fingerprints were located on the BB gun.

For appellant, Lieutenant Jason Proctor[2] testified that he showed Mr. Beyene footage from the Holiday Inn's surveillance video the night of April 15, 2010. He was not sure whether the video was paused or playing at the time.

Dr. Jeffrey Neuschatz also testified on behalf of appellant as an expert in eyewitness identification. Dr. Neuschatz testified that he has a PhD in cognitive science and has focused his research on eyewitness identification. He said that high stress situations impair an eyewitness's memory. He further said that the "exposure time," or the time an eyewitness has to make observations, impacts the accuracy of the eyewitness's memory. Dr. Neuschatz stated that research showed disguises and hats impair eyewitness identification. In addition, if a subject has a weapon, the research showed that the eyewitness focused more on the weapon than on the subject. Dr. Neuschatz also testified that an eyewitness's confidence in his or her identification of a subject does not correlate with the eyewitness's accuracy in making that identification.

On cross-examination, Dr. Neuschatz agreed that cross-racial eyewitness identifications are problematic. He said that Ms. Harris's and Mr. Beyene's identifications were cross-racial but Mr. Cox's identification was not. He testified that he was not opining that any of the eyewitnesses were inaccurate in their identifications, although he believed that Mr. Beyene's identification might have been tainted if Mr. Beyene had, in fact, seen surveillance footage from the hotel.

---

[2] Lieutenant Proctor received a promotion sometime after the suppression hearing.

Following the close of proof and deliberations, the jury convicted appellant as charged. The trial court sentenced appellant as a repeat violent offender to life in prison without the possibility of parole for the aggravated robbery conviction. There is no judgment form reflecting appellant's conviction and sentence for aggravated assault, but the record indicates that the jury found appellant guilty and that the trial court sentenced him as a career offender to fifteen years for this offense.

## III. Analysis

## A. Motion to Suppress Pretrial Identification

Appellant argues on appeal that the pretrial photographic lineup procedure utilized by Detective Peterson was unduly suggestive because appellant was the only person wearing a red shirt in the lineup and because Detective Peterson knew which person in the lineup was the suspect. Appellant urges this court to apply the factors from *Neil v. Biggers*, 409 U.S. 188, 199 (1972), to determine that the allegedly unduly suggestive lineup procedures rendered the identifications unreliable. The State responds that the lineup was not unduly suggestive because all of the men depicted in the lineup were of the same race and had similar hairstyles, complexions, heights, and weights. The State further argues that Detective Peterson did not in any way suggest the identity of the suspect to the witnesses. We agree with the State.

## 1. Standard of Review

In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise. *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). In reviewing the findings of fact, evidence presented at trial may "'be considered by an appellate court in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

## 2. Identification

"To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." *State v. Cribbs*, 967 S.W.2d 773, 794 (Tenn. 1998). "When a defendant argues that a lineup is suggestive based on differences between the subjects of the lineup, this Court has required that the subjects be 'grossly dissimilar' before it will find that the lineup is impermissibly suggestive." *State v. Albert W. Bentley*, No. M2010-01882-CCA-R3CD, 2011 WL 6916762, at *5 (Tenn. Crim. App. Dec. 29, 2011) (citing *State v. Edwards*, 868 S.W.2d 682, 694 (Tenn. Crim. App. 1993)). Nonetheless, a finding that identification procedures are suggestive does not necessitate exclusion of out-of-court or in-court identifications if the identification was reliable. *State v. Philpott*, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). The following factors should be considered when analyzing the reliability of an identification:

1. the opportunity of the witness to view the criminal at the time of the crime;
2. the witness's degree of attention at the time of the crime;
3. the accuracy of the witness's prior description;
4. the level of certainty demonstrated at the confrontation; [and]
5. the time elapsed between the crime and the confrontation.

*Id.* (citing *Biggers*, 409 U.S. at 199).

## 3. Application

Appellant's first contention is that his wearing a red shirt in the photographic lineup drew attention to his photograph, which influenced the witnesses' identifications. In *Albert W. Bentley*, this court was met with a similar argument, except that the photographic lineup was in black-and-white and Bentley was the only person wearing an all-white shirt. 2011 WL 6916762, at *5. This court concluded that Bentley was not "grossly dissimilar" from the other subjects because all of the men were wearing different types of shirts while other details remained similar, such as the background of the pictures, the race of the subjects, and the age of the subjects. *Id.* at *6. Likewise, in this case, while appellant is the only person wearing a red shirt, all of the men are wearing different colors and different styles of shirts. The complexion, weight, height, age, hairstyles of the subjects are remarkably similar. Therefore, we conclude that appellant's photograph was not grossly dissimilar from the other subjects.

Appellant's second contention is that Detective Peterson might have unwittingly suggested to the witnesses which photograph was the suspect's because he knew which

photograph depicted appellant. In support of this argument, appellant cites other jurisdictions that require "blind administrators," *i.e.* persons without knowledge of the case, to present photographic lineups to witnesses. However, appellant has not presented any evidence that Detective Peterson actually did anything to influence the witnesses' identifications, and the trial court specifically accredited Detective Peterson's testimony that "he did not confirm the witnesses' identifications." Because we are not willing to engage in speculation about what Detective Peterson might have done, we conclude that the photographic lineup procedure was not unduly suggestive. Thus, it is not necessary for us to apply the factors from *Biggers*. Appellant is without relief as to this issue.

## B. Sufficiency of the Evidence

Appellant argues that the evidence is insufficient to support his convictions because the State, he contends, cannot prove his identity as the perpetrator. His argument is premised on the exclusion of Jonathan Cox's identification testimony, which would have been required had the trial court found the pretrial identification procedure unduly suggestive and the resulting identifications unreliable. The State responds that appellant's sufficiency argument fails because the pretrial identification procedure was not unduly suggestive. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury

has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Identity is an essential element of any crime. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). The State may prove identity through direct or circumstantial evidence. *Id.* It is well-established that the issue of the perpetrator's identity is a question of fact for the jury. *See State v. Vaughn*, 29 S.W.2d 33, 40 (Tenn. Crim. App. 1998); *State v. Phillips*, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986).

Viewed in the light most favorable to the State, the evidence presented at trial revealed that Jonathan Cox first observed appellant in the well-lit men's restroom at McDonald's and then saw appellant again, this time masked and carrying a weapon, but wearing the same clothing and in the same location. Mr. Cox was able to choose appellant from a photographic lineup, which we have determined was not unduly suggestive, and he also identified appellant in the courtroom. We recognize that Mr. Cox was the only witness who saw appellant with and without a mask at McDonald's, and thus he is the only person who could identify appellant as the perpetrator. However, "[t]he credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). The jury accepted Mr. Cox's testimony, and his testimony was sufficient to support the verdicts in this case.[3] We also note that in addition to Mr. Cox's testimony, other witnesses placed appellant at the Holiday Inn across the street from McDonald's close to the time of the robbery. Ms. Harris testified that appellant was wearing gray sweatpants and changed into red shorts. Mr. Beyene testified that appellant retrieved a gray shirt from the side of the hotel. The surveillance footage from both the Holiday Inn and McDonald's allowed the jury to compare the clothing of the perpetrator

---

[3] We note that even if we had concluded that Mr. Cox's identification of appellant was inadmissible, his identification would nonetheless have been included in the sufficiency analysis under *State v. Longstreet*, 619 S.W.2d 97, 101 (Tenn. 1981). *See also State v. Ramie Anderson*, No. M2005-02086-CCA-R3-CD, 2006 WL 2380604, at *9 (Tenn. Crim. App. Aug. 17, 2006) (This court interpreted *Longstreet* as "mandat[ing] that when conducting a sufficiency of the evidence review following a finding of erroneous admission of some evidence, the appellate court should conduct the sufficiency review based on the inclusion of the erroneously admitted evidence.")

-10-

with what appellant was wearing at the Holiday Inn. Based upon this evidence, a jury could find beyond a reasonable doubt that the State proved appellant's identity. Therefore, appellant is without relief as to this issue.

### C. Admission of Testimony Regarding BB Gun

Appellant argues that the trial court erred by allowing Officer Knalls to testify regarding the discovery of the BB gun on the Holiday Inn property nearly one month after the robbery and assault at McDonald's. Specifically, he contends that the testimony was irrelevant because the BB gun was found in a high-traffic area nearly one month after the offenses. The State responds that the trial court properly allowed the testimony. We agree with the State.

The determination of whether evidence is relevant and admissible at trial is a matter left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *State v. Dellinger*, 79 S.W.3d 458, 485 (Tenn. 2002); *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. All relevant evidence is admissible unless specifically excepted by constitution, statute, rules of evidence, or rules of general application. Tenn. R. Evid. 402. One such exception is that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. "Unfair prejudice" is "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Tenn. R. Evid. 403, Adv. Comm. Note).

In this case, Ms. Conley testified that appellant was carrying a black handgun when he committed the offenses *sub judice*. In addition, the black handgun can be seen in the McDonald's surveillance footage. Mr. Beyene testified that appellant retrieved a shirt from the side of the hotel. Officer Knalls testified that on May 12, 2010, a taxicab driver showed him a handgun, later determined to be a BB gun, partially sticking out of bushes by the Holiday Inn. The trial court determined that the discovery of the BB gun was relevant because witnesses had seen the robber with a black handgun and other witnesses had seen him in and around the Holiday Inn. The trial court further determined that the timing of the

discovery went to the weight of the evidence, not its admissibility, and that the probative value was not outweighed by the danger of unfair prejudice.[4]

The testimony regarding the discovery had a tendency to make the existence of the fact that the perpetrator carried a handgun more probable than without the evidence; therefore, it was relevant to the case. Furthermore, we cannot say that the circumstances of the discovery had an "'undue tendency to suggest decision on an improper basis.'"*Banks*, 564 S.W.2d at 951(quoting Tenn. R. Evid. 403, Adv. Comm. Note). Therefore, we conclude that the trial court did not abuse its discretion in admitting the testimony.

### D. Jury Instructions

Appellant contends that the trial court improperly denied his request to give the jury a special instruction on eyewitness identification. Instead, the trial court instructed the jury using the Tennessee Pattern Jury Instruction on eyewitness identification. The State responds that the instruction was a correct and complete statement of the law. We agree with the State.

At trial, defendants have a "constitutional right to a correct and complete charge of the law." *State v. Wendi Nicole Garrison*, No. E2011-00496-CCA-R3CD, 2012 WL 3079238, at *6 (Tenn. Crim. App. July 27, 2012), *perm. app. denied* (Tenn. Jan. 14, 2013) (quoting *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). "A defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court. *State v. Phipps*, 883 S.W.2d 138, 149-50 (Tenn. Crim. App. 1994) (citing *Casey v. State*, 491 S.W.2d 90, 94 (Tenn. Crim. App. 1972)). However, trial courts are not required to give special instructions if the general jury charge covers the substance of the requested special instructions. *Wendi Nicole Garrison*, 2012 WL 3079238, at *6. Questions regarding the propriety of jury instructions are mixed questions of law and fact; thus, our standard of review is de novo with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

On appeal, this court will only invalidate a jury instruction if, "when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). "A challenge to a single jury instruction must be judged in context of the entire jury charge." *State v. Bonam*, 7 S.W.3d

---

[4] We recognize that the proper standard under Tennessee Rule of Evidence 403 is that evidence may be excluded if the probative value is *substantially* outweighed by the danger of unfair prejudice. However, the trial court's use of a lower standard is harmless error because if the probative value is not outweighed by the danger of unfair prejudice then it cannot be substantially outweighed by the danger of unfair prejudice.

87, 89 (Tenn. Crim. App. 1999). When reviewing a challenge to a particular jury instruction on appeal, the key consideration is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *State v. Odom,* 336 S.W.3d 541, 568 (Tenn. 2011)*, cert. denied*, 132 S. Ct. 397, 181 L. Ed. 2d 255 (U.S. 2011) (quoting *State v. Rimmer*, 250 S.W.3d 12, 31 (Tenn. 2008)). A charge that results in prejudicial error is one that fails to fairly submit the legal issues to the jury or misleads the jury about the applicable law. *Wendi Nicole Garrison*, 2012 WL 3079238, at \*6 (citing *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997)).

Appellant submits that he requested a special jury instruction that incorporated Dr. Neuschatz's theories on eyewitness identification. He concedes that the trial court's instruction was consistent with the jury instruction announced in *State v. Dyle*, 899 S.W.2d 607, 612 (Tenn. 1995). The instruction he requested was as follows:

> One of the issues in this case is the identification of the defendant as the person who committed the crime. The State has the burden of providing [sic] identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness. It is a statement of how well the witness remembers another person, and its value may depend upon your consideration of several factors[,] including:
>
> (1) The witness' capacity and opportunity to observe the other person. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, whether a weapon was involved, the witness' level of stress or fear, whether the person was a prior acquaintance of the witness, and whether the witness was able to clearly see the person's face;
>
> (2) The circumstances under which the witness' identification was made, including whether it is a product of the witness' own recollection;
>
> (3) The occasions, if any, on which the witness made an identification consistent or inconsistent with the one at trial and the circumstances surrounding that identification;
>
> (4) Testimony regarding general principles of how memory works, as presented by either side.

The actual instruction given to the jury by the trial court was as follows:

One of the issues in this case is the identification of the defendant as the person who committed the crime. The [S]tate has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness, and its value may depend upon your consideration of several factors. Some of the factors which you may consider are: (1) the witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness; (2) the degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness' own recollection; (3) the occasions, if any, on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and (4) the occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identifications.

The trial court's instruction gave a correct and complete charge of the law regarding eyewitness identification under *Dyle*. 899 S.W.2d at 612. Therefore, it fairly submitted the legal issues to the jury and did not mislead the jury about the applicable law. Appellant's modifications may have inappropriately substituted the applicable law with Dr. Neuschatz's opinions. Thus, we conclude that the trial court properly denied appellant's request for a special jury instruction.

## CONCLUSION

Based on the record, the applicable law, and the parties' briefs, we affirm the judgments of the trial court. However, we note that his aggravated robbery judgment form incorrectly states that he is a career offender as to that conviction. Therefore, we remand this matter to the trial court for entry of an amended judgment form for appellant's conviction for aggravated robbery that reflects his status as a repeat violent offender.

_____
ROGER A. PAGE, JUDGE

-14-